COMMONWEALTH vs. DANIEL SINEIRO.

Bristol. October 6, 2000. - December 1, 2000.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Practice, Criminal,* Indictment, Required finding, Probable cause hearing. *Evidence,* Prior inconsistent statement.

In a criminal case, any lack of specific dates and times ("divers dates") in the indictments did not encumber the defense such that the charges should have been dismissed, where the defense was that the crimes had not occurred and that the alleged victims were not credible. [737-738]

Evidence at the trial of indictments alleging sexual abuse of a child was sufficient to warrant a finding by the jury that the defendant's touching of the victim was indecent and intentional. [738]

At the trial of indictments alleging sexual abuse of two children, the judge correctly admitted one child's testimony at the probable cause hearing as substantive evidence under principles stated in *Commonwealth* v. *Daye,* 393 Mass. 55 (1984), where the judge concluded that the child's trial testimony asserting an inability to remember was false and where the testimony at the probable cause hearing, which was not coerced and was subject to extensive cross-examination, was sufficiently intrinsically reliable not to need any further corroboration. [738-745]

INDICTMENTS found and returned in the Superior Court Department on February 7, 1996.

A motion to dismiss was heard by *Raymond J. Brassard, J.,* and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brian J. Kelly* for the defendant.

*David Keighley,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court found the defendant guilty on two indictments charging rape of a child, G. L. c. 265, § 23, and on one indictment charging indecent assault and battery on a child under fourteen years of age, G. L. c. 265, § 13B. The victims were his minor daughters, Mary and Jane

(pseudonyms). We transferred the case here on our own motion. We reject the defendant's arguments that (1) the indictments should have been dismissed because of lack of specificity as to the dates and times of the alleged crimes; (2) he was entitled to a required finding of not guilty on the charge that he had indecently assaulted Mary; and (3) the judge improperly admitted in evidence at trial, for substantive purposes, Jane's testimony at the probable cause hearing.

The jury could have found the following facts. One afternoon in the summer of 1986, Mary, who was then in the third grade, was at home playing with her brother, when her father, the defendant, called her into his bedroom. There, the defendant told her to take off her pants. She lay on her back on her parents' bed. The defendant took off his pants, lay down on top of Mary, and "put his penis into [her] vagina." Mary tried to move away, but the defendant pulled her back. When the defendant had finished raping Mary, he told her not to tell anyone what had happened. Mary's mother was not home at the time.[1]

On another occasion, the defendant called both Jane and Mary into his bedroom. The defendant told the girls to take off their clothes and lie down on the bed. The defendant took off his pants, kissed Jane on the lips and proceeded to have sexual intercourse with Jane. Jane stated that it hurt, that she was crying, and that, when the defendant stopped having sexual intercourse with her, "[h]e did it to my sister [Mary]." Mary lay naked on the bed on her stomach, while her father lay on top of her and anally raped her.

When Jane was about ten years old, she was sleeping in her bedroom when the defendant awakened her. The defendant wore a shirt but no pants. He proceeded to engage in sexual intercourse with Jane, while she lay naked on the floor. He stopped when the girls' mother unexpectedly walked into the room. She asked the defendant, "How can you do this?," and sent Jane to her (the mother's) bedroom. The next morning, the defendant told Jane that he was sorry.

Occasionally, after supper, Mary would sit on the defendant's lap, in the presence of her mother and her sister, while the defendant rubbed her arms and touched her breasts. Mary and Jane once confronted their mother with the fact that their father

[1]The mother of the two victims worked during the day, while her husband, the defendant, who worked mornings and evenings, spent afternoons during school vacation at home with his children.

had engaged in sexual intercourse with them. At first the mother did not believe her daughters. Then she grew upset and cried. Finally, after becoming sick in the bathroom, the girls' mother asked them "[i]f [they] liked it."

In April of 1995, Mary spoke with a counselor at her high school about her father's behavior. The Department of Social Services became involved with the family, and, shortly thereafter, both girls moved out of their home.[2] When Jane visited her parents' home in late summer or early fall of 1995, the defendant admitted to Jane that he had had sexual intercourse with her, and told her that he was sorry.

1. The indictments concerning Mary alleged that the defendant sexually assaulted her "on divers dates and at divers times" between August 29, 1986, and August 29, 1992. The indictments concerning Jane made similar allegations for the period between November 25, 1983, and November 25, 1988. The defendant's motion to dismiss the indictments was denied. He argues that the lack of specific dates and times in the indictments, combined with the denial of his request for a bill of particulars and the alleged lack of credibility of the victims, encumbered his defense to the extent that his rights of due process were violated.

The precise dates and times of the assaults are not elements of the crimes charged. *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 439-440, cert. denied, 519 U.S. 1015 (1996). The question whether an indictment has sufficient specificity to allow a defendant to prepare an adequate defense is decided on a case by case basis. *Commonwealth* v. *Montanino*, 409 Mass. 500, 512 (1991). Here, the defendant was furnished with copies of police reports and grand jury minutes. The case was the subject of a probable cause hearing in the District Court, at which both victims testified and were subjected to lengthy cross-examination by the defendant's counsel. The defendant does not claim that the Commonwealth withheld any material information from him. His defense at trial was that the crimes had never occurred; that his daughters had lied to escape parental supervision; and that Mary was particularly untrustworthy because she suffered from mental illness and had a problem with drugs and alcohol. The defendant does not assert that he would have conducted his defense any differently had the indictments been

---

[2]In March, 1997, at the time of trial, both girls were again living at home.

more precise as to dates and times. See *Commonwealth* v. *Kirkpatrick, supra* at 442; *Commonwealth* v. *Conefrey*, 420 Mass. 508, 511 n.6 (1995); *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 435 (1994). The claimed lack of precision in the indictments did not bear on the central question before the jury concerning the credibility of the victims.[3] The motion to dismiss was properly denied.

2. To prove that the defendant had committed indecent assault and battery on Mary, the prosecutor elicited testimony from her that her father had indecently rubbed her breasts. At one point, in her direct examination, Mary testified that the rubbing consisted of her breasts being "[a]ccidentally touched." The defendant focuses on this testimony and argues that his motion for a required finding of not guilty on the indecent assault and battery charge on which he was convicted should have been allowed because the Commonwealth's evidence was insufficient to warrant a finding by the jury that the touchings were intentional.

The motion for a required finding of not guilty was properly denied. After the reference to an accidental touching, Mary clarified her testimony. She indicated (as the jury could have found) that the defendant had inappropriately rubbed her breasts at times, as distinguished from inappropriately squeezing or fondling them, and that he had engaged in the indecent conduct while her mother and sister watched him. In addition, Jane's testimony at the probable cause hearing, as shall be discussed next in this opinion, properly was admitted as substantive evidence. Jane told the jury that the defendant "touched [Mary] a lot," and that she (Jane) saw the defendant touch Mary's breasts, in the presence of their mother. Mary's testimony, considered as a whole, and supported by Jane's testimony, was sufficient to warrant a finding by the jury that the defendant's conduct in touching Mary's breasts was an indecent and intentional act. See *Koonce* v. *Commonwealth*, 412 Mass. 71, 75 (1992).

3. We now come to the principal issue in this case concerning

---

[3]The judge also did not abuse his discretion in denying the defendant's motion for a bill of particulars. *Rogan* v. *Commonwealth*, 415 Mass. 376, 378 (1993). The Commonwealth's proof at trial did not exceed the scope of the indictments or the evidence presented at the probable cause hearing. The defendant had the benefit of full discovery and, as has been discussed, was not hampered in his ability to present a defense.

the admission of Jane's probable cause testimony as substantive evidence. The issue arose in the following manner. In October of 1995, both Mary and Jane testified to the defendant's sexual assaults on them at a probable cause hearing in the District Court. Subsequently, in April of 1996, Jane signed an affidavit, in which she indicated that her allegations of the defendant's sexual assaults on her were false, and that she had made the earlier statements in order to help her sister, who "was having problems with my parents." Several months later, Mary also signed an affidavit, in which she too indicated that the allegations against the defendant were untrue, and that she had made them up because of her problems with addiction and mental illness.

In light of these affidavits, and at the request of the prosecutor, the judge held an evidentiary voir dire hearing to determine whether the testimony of Mary and Jane at the probable cause hearing should be admitted substantively if they did not testify at trial in a manner consistent with their former testimony. The judge properly held a voir dire.

At the voir dire hearing, Mary testified that she remembered being sexually assaulted from the time she was eight or nine years old until April of 1995, but claimed that she did not remember whether the assaults were committed by her father or some other person. Mary testified that, at the time of the probable cause hearing, she believed that she had been assaulted by her father. At the voir dire hearing, however, she stated, "I know it happened, but I just don't know who." She also indicated that she "just [did not] want to remember anything."

Jane testified that, although she remembered testifying under oath at the probable cause hearing, she did not recall the questions asked of her nor the answers that she gave, and, further, that she did not have a present memory of the incidents that formed the basis of her probable cause testimony. Jane indicated that she did not remember a time when she and her sister told their mother about their father's sexual assaults on them. When asked whether it ever happened, or whether she just did not remember, Jane responded, "I don't remember." Jane blamed her inability to remember on the fact that she had a "lump on [her] head."

At the conclusion of the hearing, the judge found that there were significant inconsistencies between Mary and Jane's testimony at the voir dire hearing and their testimony at the

probable cause hearing that related to the fundamental issues whether either of them had been sexually assaulted, and, if so, who the perpetrator had been. The judge found, based on careful observations of the demeanor of both Mary and Jane, and on their responses to various questions, that he had "serious and significant doubt as to their explanation[s] for the inconsistent statements," and concluded that both Mary and Jane had falsified a lack of memory. The judge further decided that the probable cause testimony of the victims was not the result of coercion. Finally, the judge concluded that, based on the Commonwealth's representations of evidence expected to be produced at trial, there would be corroborating evidence to support the victims' probable cause testimony. The judge then ruled that, because both victims had falsified a lack of memory, they were "unavailable." The judge ultimately concluded that their earlier testimony could be admitted substantively on alternate grounds: (1) prior inconsistent statements properly admitted under the principles stated in *Commonwealth* v. *Daye*, 393 Mass. 55 (1984); or (2) as former testimony of an unavailable witness under the principles set forth in Proposed Mass. R. Evid. 804 (a) (3) and (b) (1).

At trial, Mary testified that her affidavit was untrue, and that she had signed it because she "didn't want to go through with the case." Mary further testified, consistent with her probable cause testimony, that her father had, on two separate occasions, sexually assaulted her, and that, on one occasion, Jane was lying on the defendant's bed naked, while the defendant anally raped her (Mary). Mary also described an occurrence when she was about fourteen years old, when she and Jane together told their mother that the defendant had been having sexual intercourse with them. As a result of Mary's testimony at trial, the issue whether to admit her testimony at the probable cause hearing was rendered irrelevant.

Jane testified at trial, but persisted in claiming that she could not remember any inappropriate touching or sexual acts involving the defendant. Jane's testimony at the probable cause hearing, that the defendant had sexually assaulted her and Mary, and that he had apologized to her for having sexual intercourse with her, was admitted in evidence.[4]

As indicated, the judge admitted Jane's testimony at the prob-

[4]Jane's probable cause testimony was introduced in the following manner: The prosecutor directed Jane's attention to specific pages and lines of the

able cause hearing as substantive evidence before the jury on alternate grounds. First, the judge ruled that a basis existed to answer in the affirmative the question left open in *Commonwealth* v. *Daye, supra* at 73 n.17: "whether, when the circumstances at trial indicate that a witness is falsifying a lack of memory, a judge may admit the [witness's prior] statement as 'inconsistent' with the claim of lack of memory" (citations omitted). Second, the judge concluded that the principles expressed in proposed rule 804 (a) (3) and (b) (1) should be adopted to permit introduction of her testimony at the probable cause hearing for substantive value.[5]

We conclude that the first ground relied on by the judge, an application of the principles of *Commonwealth* v. *Daye, supra*, to the circumstances in this case, with certain modifications of those principles that we shall discuss, was a correct basis on which to admit Jane's testimony at the probable cause hearing. As a result, we need not discuss whether we should adopt the principles in proposed rule 804 for this type of case or any other case.

In *Daye*, we held that prior inconsistent testimony by a witness before a grand jury, under certain conditions, could be admitted as substantive evidence. *Id.* at 75. In so holding, we adopted the principles of Proposed Mass. R. Evid. 801 (d) (1) (A). We set forth three general requirements for the use of such grand jury testimony: (1) there must exist an opportunity for effective cross-examination of the witness at trial; (2) the witness's statement must clearly be that of the witness, rather than the interrogator, and be free from coercion; and (3) some corroborative evidence must be presented. See *id.* at 73-75. See also *Commonwealth* v. *Berrio*, 407 Mass. 37, 45 (1990). With reference to corroboration, we held in *Commonwealth* v. *Noble*, 417 Mass. 341 (1994), that, when the prior inconsistent grand

transcript of the probable cause hearing. The prosecutor then read questions from the transcript, and asked Jane to read her answers to those questions.

[5]Proposed Mass. R. Evid. 804 (a) (3) provides that a witness is "unavailable" when the witness "testifies to a lack of memory of the subject matter of his statement." If a witness is "unavailable," proposed rule 804 (b) (1) allows for the substantive use of his "[t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

jury testimony concerns an essential element of the crime, the Commonwealth must offer at least some additional evidence on that element in order to support a conclusion of guilt beyond a reasonable doubt. *Id.* at 345 (adopting test set forth in *United States* v. *Orrico*, 599 F.2d 113, 119 [6th Cir. 1979]). The additional evidence, however, need not be sufficient in itself to establish a factual basis for each element of the crime. *Id.* at 345 n.3.

The judge properly could conclude that Jane's testimony at trial was inconsistent with her testimony at the probable cause hearing. A trial judge has considerable discretion in deciding whether inconsistency exists between a witness's testimony at trial and prior testimony or statements of the witness. If inconsistency is found, the testimony or statement creating it may be introduced for purposes of impeachment. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982); *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942) ("[I]t is not necessary that there should be a contradiction in plain terms. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict"). In keeping with this well-established principle, there is good reason for a judge to find the existence of inconsistency when the judge concludes that testimony asserting an inability to remember is false.[6] As one commentator has aptly stated: "[T]he tendency of unwilling or untruthful witnesses to seek refuge in a claim of forgetfulness is well recognized. Hence the judge may be warranted in concluding under the circumstances the claimed lack of memory of the event is untrue and in effect an implied denial of the prior statement, thus qualifying it as inconsistent." 2 McCormick, Evidence § 251, at 117 (5th ed. 1999). As this observation suggests, when a witness does not deny his probable cause testimony, nor its truth, but chooses to feign an inability to recall the testimony in an attempt to avoid giving evidence that might send another to jail, a judge should not be without

---

[6]The preliminary determination, that the witness's lack of memory has been fabricated, is one for the judge, and, if found, is conclusive as long as it is supported by the evidence. *Commonwealth* v. *Tiexeira*, 29 Mass. App. Ct. 200, 204 (1990). The jury should not be told of the judge's preliminary determination. The jury, of course, will decide the credibility of the witness based on all the information before them and under instructions outlining the factors for assessing credibility.

recourse.[7] See *Commonwealth* v. *Tiexeira*, 29 Mass. App. Ct. 200, 204 (1990); *Commonwealth* v. *Bray*, 19 Mass. App. Ct. 751, 758 (1985), *S.C.*, 407 Mass. 296 (1990). Cf. *Commonwealth* v. *Martin*, 417 Mass. 187, 197 (1994) (true failure of memory not inconsistent with prior testimony). Thus, the judge correctly decided that the jury should hear all of Jane's versions of the events, observe her demeanor, and decide whether her testimony at trial or her testimony at the probable cause hearing was the truth.[8]

The last point for discussion is the applicability of the general conditions set forth in the *Daye* decision, previously mentioned, before prior testimony of a witness can be admitted for substantive use. Here there is no claim that Jane's probable cause testimony was not in her own words or was coerced, and, as has been discussed, she was available to be cross-examined at trial about the underlying events. That leaves the matter of corroboration. The requirement, and level, of corroboration required by the *Daye* decision, and explained in the *Noble* decision, has to be understood in the context of prior grand jury testimony, because that was the subject of those cases. Grand jury testimony, while given under oath, is given in secret, may contain hearsay, is often done by way of leading questions, and

---

[7]There is substantial agreement among other courts, both Federal and State, that a feigned lack of recollection regarding the facts contained in a prior statement constitutes inconsistent testimony. As to Federal courts, see *United States* v. *Owens*, 484 U.S. 554, 563 (1988) ("It would seem strange . . . to assert that a witness can avoid introduction of testimony from a prior proceeding that is inconsistent with his trial testimony . . . by simply asserting lack of memory of the facts to which the prior testimony related"); *United States* v. *Bigham*, 812 F.2d 943, 946-947 (5th Cir. 1987) (discussing advisory committee note to Fed. R. Evid. 801 that exception for prior inconsistent statements would protect against "turncoat" witnesses); *United States* v. *Rogers*, 549 F.2d 490, 496 (8th Cir. 1976), cert. denied, 431 U.S. 918 (1977) (claimed inability to recall, when disbelieved by trial judge, may be viewed as inconsistent with previous statements); *United States* v. *Insana*, 423 F.2d 1165, 1170 (2d Cir.), cert. denied, 400 U.S. 841 (1970) (distinguishing between genuine lack of memory [not inconsistent] and false lack of memory [inconsistent]). As to State courts, see *Van Hatten* v. *State*, 666 P.2d 1047, 1050-1052 (Alaska Ct. App. 1983); *People* v. *Johnson*, 3 Cal. 4th 1183, 1219-1220 (1992), cert. denied, 510 U.S. 836 (1993); *State* v. *Doherty*, 56 Ohio App. 2d 112, 114 (1978).

[8]The defendant's constitutional right to confrontation was not threatened here, because Jane took the stand and was available for cross-examination. See *United States* v. *Owens*, *supra* at 559-560; *California* v. *Green*, 399 U.S. 149, 160 (1970); *Commonwealth* v. *Torres*, 367 Mass. 737, 739 n.2 (1975).

is not subject to cross-examination. It is an understandable concern, therefore, that grand jury testimony admitted at trial for substantive use be subject to a certain level of corroboration before a conviction can be based on it. See *Commonwealth* v. *Noble, supra* at 345; *Commonwealth* v. *Daye, supra* at 74; *United States* v. *Orrico, supra* at 117 ("Our concern in this case focusses on the fact that the central element of the crime with which the defendant was charged was established entirely through the use of out-of-court statements, made at a time when the defendant had no opportunity to cross-examine the witnesses as to the accuracy of their accusations").

Testimony of a complaining witness at a probable cause hearing presents an entirely different matter. The testimony is given by the witness under oath, in open court, where the defendant has both a motive and opportunity to cross-examine the witness.[9] The hearing, including the testimony of all the witnesses that appear, is subject to the rules of evidence. See *Mendonza* v. *Commonwealth*, 423 Mass. 771, 785-786 (1996); *Myers* v. *Commonwealth*, 363 Mass. 843, 849 n.6 (1973). It is these factors, especially the factor of cross-examination, that render a witness's testimony at a probable cause hearing trustworthy, in the sense that that word is used when hearsay evidence is being considered for presentation for its truth to a fact finder in a criminal case. It is not critical, when evaluating guilt, that the fact finder have observed first-hand a witness's statement in order to evaluate credibility and probative worth. As Judge Learned Hand observed in *DiCarlo* v. *United States*, 6 F.2d 364, 368 (2d Cir.), cert. denied, 268 U.S. 706 (1925): "If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court." For these reasons, corroboration of a witness's probable cause testimony is not required before such testimony may be admitted for substantive purposes, when the witness falsely claims a lack of memory.

---

[9]There commonly is extensive cross-examination at probable cause hearings because defense lawyers are present and are apt to use the hearing as an opportunity for discovery. In any case, the relevant question is not whether there was a full and effective cross-examination, but whether there was a full opportunity for cross-examination. See *United States* v. *Owens, supra* at 559.

Thus, Jane's uncoerced testimony at the probable cause hearing, at which she had been extensively cross-examined, contained sufficient intrinsic reliability to support the jury's finding of guilt without the need for the type of corroboration required by *Daye*,[10] or, for that matter, any other type of corroboration.[11] We hold, under the principles set forth in the *Daye* case, as further analyzed here, that a judge, who is warranted in concluding that a witness at a criminal trial is falsifying a lack of memory, may admit in evidence for substantive consideration by the jury the witness's prior testimony at a probable cause hearing, so long as that testimony was that of the witness and was not coerced and the witness is present at trial for cross-examination.[12] We conclude that the Commonwealth's evidence as a whole was sufficient to permit the jury to find beyond a reasonable doubt that the defendant had raped Jane.

*Judgments affirmed.*

---

[10]In *Commonwealth* v. *Fort*, 33 Mass. App. Ct. 181, 185 (1992), the Appeals Court extended the principles in *Commonwealth* v. *Daye*, 393 Mass. 55 (1984), correctly in our view, to a witness's prior inconsistent testimony at a probable cause hearing. In so doing, the court applied the *Daye* test for corroboration to a witness's prior testimony from a probable cause hearing that was admitted for substantive use. *Id.* at 187. The court properly did so because *Daye* was the governing case at the time on the corroboration point.

[11]For example, under our case law, a criminal defendant may not be convicted solely on the basis of his uncorroborated confession, *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984), or admissions, *Commonwealth* v. *Leonard*, 401 Mass. 470, 472-473 (1988). "The corroboration required, however, may be quite minimal. There need only be some evidence besides the confession [or admissions] that the criminal act actually occurred. The corroborating evidence need not point to the accused as the perpetrator." P.J. Liacos, Massachusetts Evidence § 9.12, at 656 (7th ed. 1999).

For what it is worth, we note that there was evidence here that corroborated Jane's probable cause testimony, at least in the minimal sense just described. Mary testified that Jane was present at times when the defendant indecently assaulted Mary by rubbing her breasts; that, on one occasion when Mary was raped by her father, Jane lay naked beside them on the bed and observed the act; and that Mary and Jane together told their mother, the defendant's wife, that they each had been sexually assaulted by the defendant.

[12]A judge who concludes that a witness at a criminal trial is falsifying a lack of memory, of course, may also admit the witness's prior grand jury testimony for substantive consideration, but because the grand jury testimony has not been the subject of cross-examination, the general conditions set forth in the *Daye* case must be satisfied before the testimony is admitted as a prior inconsistent statement.