COMMONWEALTH *vs.* RAFAEL MOQUETTE.

No. 99-P-2037.

Suffolk. June 1, 2001. - January 17, 2002.

Present: BROWN, DOERFER, & COHEN, JJ.

Further appellate review granted, 436 Mass. 1102 (2002).

*Evidence,* Spontaneous utterance, Prior inconsistent statement, Corroborative evidence, Prior misconduct. *Due Process of Law,* Extrajudicial statement.

At the trial of complaints charging assault and battery, assault and battery by means of a dangerous weapon (a belt), and violation of a protective order, the judge properly admitted in evidence, under the spontaneous utterance exception to the hearsay rule, remarks made by two child victims both immediately after fleeing from the defendant and forty minutes after the attack, given the ages of the children (nine and eleven), the time of the day (early morning), and the violent nature of the attack [616-618]; however, where the hearsay statements, which had been made in circumstances giving rise to an increased chance for confusion or misunderstanding, were the only evidence of the defendant's guilt of one count of assault and battery by means of a dangerous weapon, and where the children's trial testimony contradicted the statements, with no obvious indication of falsehood or motive to lie, the defendant's conviction on that count could not stand [619-623].

At the trial of complaints charging assault and battery, assault and battery by means of a dangerous weapon (a belt), and violation of a protective order, the trial judge properly admitted, with forceful limiting instructions, evidence of the defendant's conduct that gave rise to the issuance of the protective order, where such evidence was relevant to the defendant's state of mind and intent, matters in dispute at the trial. [623-625]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on October 21, 1998.

The case was tried before *R. Peter Anderson,* J.

*Astrid H. afKlinteberg* for the defendant.

*Rami M. Vanegas,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a District Court jury of assault and battery, G. L. c. 265, § 13A, assault and bat-

tery by means of a dangerous weapon, G. L. c. 265, § 15A (two counts), and violation of a protective order, G. L. c. 209A, § 7. On appeal, the defendant claims that (1) hearsay evidence was improperly admitted, and (2) evidence of his prior bad acts likewise was improperly admitted.

We sketch the basic facts. On August 17, 1997, at approximately 4:30 A.M., private security officers at a housing project in the Roxbury section of Boston saw a woman, later identified as Rosaline Motero, and a young boy, later identified as Motero's nine year old son Joel, run out of an apartment building. According to the security officers' testimony at trial, when the officers approached, Joel told them that his mother's boyfriend had hit him, his mother, and his sister, and that he and his mother had fled in fear.

Shortly thereafter, the officers saw a man, later identified as the defendant, run out of the building carrying a shiny object in his hand. After a brief chase, the defendant was apprehended. When the officers pat frisked the defendant, a folding knife was recovered from a rear trouser pocket. Police were summoned and the defendant was placed under arrest.

The security officers then accompanied Motero and Joel back to Motero's apartment. Inside the apartment they found Motero's eleven year old daughter, Aneri. According to the security officers' testimony at trial, the girl was crying and said that the defendant had hit her and her brother with a belt, which she produced. Aneri had visible bruises on her leg and a welt on her hand. The security officers called for an ambulance, and both Aneri and Joel were examined in their apartment by emergency medical technicians (EMTs). Neither child was taken to the hospital.

At trial, Motero stated that the defendant had hit her accidentally with the telephone receiver and had hit Aneri with a belt. She testified that the defendant did not hit Joel. Aneri testified that the defendant hit her with a belt. Joel testified that the defendant hit Aneri with a belt but had not hit him. Other relevant facts are included in our analysis as necessary.

1. *Hearsay evidence.* The defendant objected at trial when the judge permitted two housing security officers, two police officers, and an EMT to repeat remarks ostensibly made by the

children on the morning of the attack. This evidence, the defendant contends, was inadmissible hearsay and should have been excluded. All of these statements were admitted by the judge under the rubric of "spontaneous utterance."

Under the "spontaneous utterance" exception to the hearsay rule, a witness's out-of-court statements are admissible if the "utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Brown*, 413 Mass. 693, 695 (1992), quoting from *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978). Statements have been determined reliable when made by a witness "under the stress of extreme trauma . . . and in a context where she would be expected to be truthful." *Commonwealth* v. *Brown*, 413 Mass. at 696. See *Commonwealth* v. *Fuller*, 22 Mass. App. Ct. 152, 155-156 (1986), *S.C.*, 399 Mass. 678, 681-683 (1987) (rape victim's postattack statements admitted as spontaneous utterance). Contrast *Commonwealth* v. *O'Connor*, 407 Mass. 663, 670 (1990). Such evidence is admissible for its substantive value, and not limited merely to corroboration. See *Commonwealth* v. *Rivera*, 397 Mass. 244, 248 (1986); *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. 398, 400-401 (1985).

After reviewing the record, we conclude that there was no error in admitting any of the contested hearsay evidence. Joel made his statements to the security officers and police just moments after fleeing from the defendant at 4:30 in the morning. In view of the boy's age (as noted, nine), there is no question that such a situation was likely to induce sufficient fear and excitement to render his statements to the law officers spontaneous. Likewise, when the police and security officers spoke to Aneri, she was crying and visibly injured. See *Commonwealth* v. *Tevlin*, 433 Mass. 305, 319 (2001). Again, in view of her age (as noted, eleven) and the circumstances of the attack, we conclude that her statements to the officers were made in sufficiently traumatic circumstances to be admissible as spontaneous utterances. See and compare *Commonwealth* v. *Bianchi*, 435 Mass. 316, 323 (2001) ("no evidence that the victim had been influenced by factors other than the trauma of the event").

The admission of the children's statements to the EMT poses a closer question.[1] At least forty minutes had elapsed between the time of the attack and the arrival of ambulance workers. Both of the children, particularly Joel, were visibly calmer by that time. In these circumstances, there is a far weaker basis for inferring the requisite mental trauma for admission of any statements.

However, both this court and the Supreme Judicial Court consistently have determined that "[t]he statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. . . . [T]here can be no definite and fixed limit of time [for application of the spontaneous utterance exception]. [Rather,] [e]ach case . . . depend[s] upon its own circumstances." *Commonwealth* v. *Grant*, 418 Mass. 76, 81 (1994), quoting from *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960). See *Commonwealth* v. *Brown*, 413 Mass. at 695-696 (statement made in hospital five hours after attack, while child victim still in pain and "terrified," properly admitted). Moreover, a trial judge enjoys broad discretion in assessing the admissibility of such evidence, and the judge's determination may be set aside only in "clear cases . . . of an improper exercise of discretion." *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973). In the instant circumstances, considering in particular the age of the children, the time of day, and the violent nature of the attack, we discern no abuse of that discretion in the trial judge's characterization of the statements to the EMT as spontaneous.

We note as an aside that even were we to conclude that the judge had erred in admitting the hearsay testimony of the EMT, this testimony would not provide a basis for reversal. The EMT's testimony as to Aneri's statement to him (that her mother's boyfriend hit her twice with a belt) was almost entirely

---

[1] The EMT, Jeffrey Capobianco, testified that Aneri told him her mother's boyfriend had hit her twice with a belt, on the thumb and the back of her leg.

He testified also that the girl looked "[a] little frightened."

Capobianco testified that he remembered the boy "complaining of some injuries but I don't remember exactly if anything was observed." He testified he "believe[d]" the injuries were to "the right hand and right leg." On cross-examination he did not "really have an independent memory" of the injuries.

duplicative of the unquestionably admissible evidence provided by the police and security officers, and it coincided with the in-court testimony of Joel, Aneri, and Motero. Further, the evidence of Aneri's injuries[2] provided physical evidence of the attack on her.[3] The EMT's testimony as to Joel's statement to him (see note 1, *supra*) was duplicative of the hearsay testimony by the police and security officers, but not of the testimony of Joel, Aneri, or Motero, or of any other evidence (this point will be addressed below).

Before turning to the defendant's other claim, we take up another aspect of the hearsay issue, not expressly raised by the parties: the only evidence presented at trial that the defendant had attacked Joel with the belt — that is, the only evidence supporting the defendant's conviction on one of the two counts for assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A — was the hearsay evidence we have just reviewed. Specifically, a security officer, Joseph Harrold, testified that Joel had told him that "his father had just hit his mother and hit him and his sister." Similarly, another security officer, Jamey Thomas, testified that Joel had said the defendant "beat him with the belt and hit his sister in her hand . . . ." Police Officer Edward Fleming testified that Aneri had told him that "her brother was struck with the belt . . . and she was struck on the hand and on the legs with the belt, the belt buckle,

---

[2]The EMT testified that Aneri had a laceration on her hand and a flat red mark across her thigh.

[3]We note as an aside that even if the children's remarks to the EMT were not characterized as spontaneous utterances, if the children had been taken to a hospital (they were not, as the mother refused), their statements, as recorded in the EMT's trip log, would now likely be admissible as hospital records under G. L. c. 233, § 79. As amended through St. 2000, c. 54, § 5, G. L. c. 111, § 70, now defines hospital records to include ambulance call reports "in the case of a patient brought to a hospital by an ambulance service." This is a natural progression of the law. *Commonwealth* v. *Franks*, 359 Mass. 577, 579 (1971) ("[o]ur decisions have demonstrated liberal interpretation of [G. L. c. 233, § 79]"). "[A] record which relates directly and mainly to the treatment and medical history of the patient, should be admitted, even though incidentally the facts recorded may have some bearing on the question of liability" (citations omitted). *Commonwealth* v. *DiMonte*, 427 Mass. 233, 242 (1998). The interest of such a declarant (i.e., a person seeking medical assistance) in providing accurate information is the same whether the information is provided to emergency medical workers in an ambulance or to doctors and nurses at a hospital.

by the defendant." In contradiction of this hearsay evidence, Joel, Aneri, and Motero testified at trial that the defendant had struck only Aneri and Motero.[4]

In *Commonwealth* v. *Daye*, 393 Mass. 55, 74 (1984), the Supreme Judicial Court permitted the use of prior inconsistent grand jury testimony, which was recanted or contradicted in the witness's trial testimony, for its probative worth on the issue of identification, under certain limited conditions; however, the court stated, "we will not permit convictions based exclusively on inconsistent [i.e., inconsistent with trial testimony] extrajudicial testimony to stand." Rather, the court concluded that, in such circumstances, the government must produce some additional corroborating evidence of the offense charged to meet its burden of proof. *Ibid.* This principle was reaffirmed and expanded in *Commonwealth* v. *Berrio*, 407 Mass. 37, 45 (1990), and *Commonwealth* v. *Noble*, 417 Mass. 341, 345-347 (1994), which held, as summarized in *Commonwealth* v. *Sineiro*, 432 Mass. 735, 741-742 (2000), that, when an extrajudicial statement relates to "an essential element of the crime" charged, "the Commonwealth must offer at least some additional evidence on that element" to obtain a conviction. Such additional evidence "need not be sufficient in itself" to support a conviction, but must corroborate the out-of-court evidence. *Id.* at 742.[5]

The question arises whether the spontaneous utterances in question here — which likewise were contradicted by the declarants' testimony at trial that the defendant had not hit Joel — require application of a corroboration requirement similar to that required for the grand jury testimony in *Daye*, *Berrio*, and *Noble*. Although the prior statements in *Daye* were made under oath during quasi judicial proceedings, such prior inconsistent statements — even when made under oath — traditionally had

---

[4]The children were entirely consistent in their testimony that the defendant had struck only Aneri. Motero, who testified through an interpreter, several times indicated that the defendant had hit "them" (i.e., the children) with the belt. However, in response to a direct question whether the defendant had hit Joel with the belt, she answered unequivocally, "No."

[5]In *Sineiro*, the Supreme Judicial Court held that corroboration is not required in order to admit probable cause testimony for substantive purposes where a witness falsely claims lack of memory, because not only is probable cause testimony given under oath, but also the witness may be cross-examined and the rules of evidence apply at a probable cause hearing. *Id.* at 744.

been admissible only for impeachment purposes, not for substantive use (*Daye* marked the change in that long-standing rule).

Evidence admitted under an established exception to the hearsay rule, on the other hand, has long been accepted by courts as substantive evidence. This disparity in the historical treatment of the two types of out-of-court statements may favor a more permissive rule with respect to the particular form of extrajudicial evidence relied upon by the jury here to convict the defendant — i.e., hearsay admitted under a traditional exception for spontaneous utterances, even though recanted or contradicted by the declarant at trial.

In many jurisdictions, however, admissible hearsay, recanted by the declarant, has been deemed *insufficient*, standing alone, to support a conviction. See, e.g., *United States* v. *Orrico*, 599 F.2d 113, 117-118 (6th Cir. 1979). *Orrico* discussed the distinction, noted by the United States Senate in adopting Fed.R.Evid. 801(d)(1)(A), between admissibility of such a statement and the fact that circumstances could arise in which such evidence standing alone would not provide a sufficient basis for conviction and dismissal would be required. The court held that where a prior inconsistent statement is the only support for a central allegation of the charge, there is not a substantial factual basis for each element of the crime to support a conclusion of guilt beyond a reasonable doubt.

In some other jurisdictions, convictions based upon disavowed out-of-court statements are permitted, but only where the judge provides special instructions as to the care required before convicting solely on the basis of disputed hearsay evidence. See, e.g., *Acosta* v. *State*, 417 A.2d 373, 377-378 & n.5 (Del. 1980).

In this case, the exception to the hearsay rule under which the children's statements were admitted — the spontaneous utterance exception — requires that, to be admissible, the proffered statements must have been made while the declarant was under the influence of a traumatic event, on the theory that the spontaneity of the statement and the stress of the event negate the likelihood of fabrication. However, in circumstances like those presented here, although there may be reduced opportunity

and inclination to fabricate,[6] there is also, at least potentially, an increased chance for error, confusion, or misstatement, both by the persons making the statements and by the persons hearing and reporting the statements.

Here, the security officers rushed over as Motero and Joel were running out of the apartment. The defendant ran out, the officers chased him, the police were summoned and arrested the defendant, and the daughter then was found in the apartment. In this context and the excitement of the event, statements were made to multiple persons (two security officers, two police officers, and an EMT) concerning multiple persons (Motero, Joel, and Aneri). The chance for lack of precision or misstatement as to any one part of the incident, or for confusion as to the details of what was said, is obvious.

Moreover, there was no indication here that either Joel or Aneri evinced any bias in favor of the defendant during their trial testimony (we note that neither child's testimony was impeached on this or any other basis). Both testified forcefully and dispassionately about the defendant's conduct, implicating the defendant in several serious crimes. Both were equally clear, however, that the defendant, while he may have menaced Joel with the belt, had struck only Aneri. Further, although EMT Capobianco testified that he saw and treated injuries on Aneri's leg and hand, with regard to Joel the EMT could not "remember exactly if anything was observed" (see note 1, *supra*). There was thus no evidence of physical injury or other evidence to corroborate the hearsay statement. We conclude that, in the circumstances here, where hearsay statements that might have been the product of confusion or misunderstanding were the only evidence of guilt and the declarants' trial testimony contradicted the statements, with no obvious indication of falsehood or motive to lie and no other corroboration

---

[6]In *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. 398, 401 n.3 (1985), we acknowledged that there is doubt among some commentators about the premise upon which the spontaneous utterance exception is built, i.e., that a witness will not fabricate while under the influence of a traumatic event (citing 4 Weinstein & Berger, Evidence § 803[2][01] [1984]). Along these lines, we note that at least one of the hearsay witnesses here described Aneri's demeanor just after the attack as angry, rather than upset. In such a mindset, the veracity of declarant's statements might be doubted. In any event, the spontaneous utterance exception is well entrenched.

that the crime occurred, the evidence was insufficient to prove guilt of assault and battery by means of a dangerous weapon on Joel (count C of the complaint). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979).

In sum, we conclude that the principle articulated in *Daye* and its progeny with respect to prior sworn testimony also applies here, where the declarants' trial testimony contradicted the earlier out-of-court statements admitted under the spontaneous utterance exception. The hearsay evidence alone was insufficient as matter of law to support a conviction. As in *Daye* and *Noble*, some other corroborating evidence was necessary for the government to meet its burden of proof. Here, such corroboration was entirely absent. In such a situation, we cannot "permit [a] conviction[] based exclusively on inconsistent extrajudicial testimony to stand." *Commonwealth* v. *Daye*, 393 Mass. at 74.

We are aware that where a recanting witness is impeached with evidence of motive to lie, it is possible that hearsay statements admitted under the spontaneous utterance exception might be sufficient, standing alone, to support a conviction (perhaps with a proper cautionary instruction). That, however, was not the situation here, and we do not speculate what impact such impeachment evidence might have on any future case. We decide only that, in the particular circumstances presented here, the defendant's conviction on the assault and battery with a dangerous weapon count with respect to Joel must be reversed.[7]

2. *Admission of prior bad acts.* The Commonwealth introduced evidence that the defendant previously (approximately

---

[7]Our decision today does not alter the existing rule permitting convictions based solely upon admissible hearsay, admitted under any exception, where the declarant either does not testify at trial or does not refute his prior statements during his trial testimony. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 29-30 & n.3 (1998) (defendant convicted solely on basis of out-of-court statements, admitted as spontaneous utterances, of victim's daughter, who did not testify at trial); *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. at 400-402 (defendant convicted solely on basis of extrajudicial identification evidence admissible as spontaneous utterance). We are concerned here only with a situation in which a trial witness, whose extrajudicial statement is admitted as a spontaneous utterance, refutes the accuracy of the reports of his prior statements, in circumstances in which the witness has no apparent motive to lie and where the hearsay evidence is the sole proof of an essential element of the offense charged. In such a situation, a conviction cannot stand consistent with the requirements of due process.

seven months prior to the incident at issue) had assaulted Motero and her children, and that an abuse prevention order had been obtained. The defendant claims on appeal, as he argued at trial (and in a pretrial motion in limine), that evidence of the conduct that gave rise to the issuance of the protective order (as opposed to evidence of the fact that a protective order was issued) was irrelevant and unduly prejudicial. We disagree.

At trial, the defendant admitted to an angry confrontation with Motero and Aneri. He admitted to swinging his belt at Aneri and to grabbing Motero as she spoke on the telephone. He specifically denied, however, intending to injure the girl or her mother. His state of mind and intent, therefore, were crucial contested points at trial.

We state a familiar proposition: Evidence of prior bad acts may not be adduced for the purpose of showing the accused's "propensity to commit the crime charged, but such evidence may be admissible if relevant for some other [probative] purpose," *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986), including for the purpose of showing intent, motive, or state of mind, and even fear on the part of the victim. See *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 370-371 (1997), and cases cited. See also *Commonwealth* v. *Martinez*, 43 Mass. App. Ct. 408, 412-413 (1997), and cases cited; *Commonwealth* v. *Johnson*, 45 Mass. App. Ct. 473, 478-479 (1998) (on charge of violation of G. L. c. 209A protective order, evidence of prior conduct was admissible to show that victim reasonably feared defendant would harm her). These were precisely the matters in dispute; the evidence, therefore, was properly admitted.

Also important is the fact that the judge gave several forceful limiting instructions, advising the jury on the proper use of the contested evidence. This reduced the possibility for prejudice. See *Commonwealth* v. *Johnson*, 45 Mass. App. Ct. at 479. Further, the Commonwealth's evidence on all the charges except the charge of assault and battery with a dangerous weapon on Joel was overwhelmingly strong, consisting as it did not only of the victims' testimony, but also the observations of the security officers and the physical evidence of injury to both Aneri and Motero. This was not a situation in which evidence of the defendant's bad character was likely to tip the scales in the government's favor. See *Commonwealth* v. *Perez*, 411 Mass.

249, 261 (1991) (perhaps most important factor in determining whether error is prejudicial is overall strength of case against defendant).

The judgment with respect to count C, assault and battery with a dangerous weapon, G. L. c. 265, § 15A, is reversed, the verdict is set aside, and judgment shall enter for the defendant. On the remaining counts, the case is remanded to the District Court judge who heard the case so that, to the extent that the defendant's other sentences may have been affected by his conviction on count C, he may be resentenced if the judge deems necessary.

*So ordered.*