Commonwealth *vs.* Thomas Lee Newman, Jr.

No. 05-P-1467.

Berkshire. December 11, 2006. - July 2, 2007.

Present: Doerfer, Brown, & Cohen, JJ.

*Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses. *Evidence,* Testimonial statement, Unavailable witness. *Witness,* Unavailability, Cross-examination.

The judge at a criminal trial did not err in admitting in evidence, for substantive consideration, certain witnesses' testimony at the earlier trial of the defendant's coventurer, based on the judge's finding that the witnesses were feigning memory loss at the later trial, and such admission did not violate the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution, where the witnesses appeared at the defendant's trial and were subject to meaningful cross-examination by him. [497-499]

INDICTMENTS found and returned in the Superior Court Department on July 25, 1997.

Following a trial of indictments before *C. Brian McDonald,* J., and review by the Supreme Judicial Court, 437 Mass. 599 (2002), the remaining indictments were tried before *Daniel A. Ford,* J.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Robert A. O'Meara* for the defendant.

Cohen, J. During the defendant's Superior Court jury trial on charges arising from the armed robbery of a convenience store, the judge found that two of the Commonwealth's witnesses were feigning lack of memory. Over the defendant's objection, the judge admitted, for substantive purposes, excerpts from the witnesses' testimony at the earlier trial of the defendant's alleged coventurer.

On appeal, the defendant contends that the admission of this

testimony violated his rights under the confrontation clause of the Sixth Amendment to the United States Constitution. We conclude that there is no merit to the defendant's position, because the witnesses appeared at the defendant's trial, where they were subject to meaningful cross-examination by him. We therefore affirm the judgments of conviction.

*Procedural background.* In July, 1997, a grand jury returned thirteen indictments against the defendant, charging him with armed robbery and other crimes committed during the robbery of a convenience store on July 11, 1997. Also indicted was the defendant's alleged coventurer, Thomas Patterson. Although Patterson was promptly arrested, and was found guilty after a jury trial in January, 1998, the defendant was not apprehended and returned to the Commonwealth until January, 2000.

At a trial held in September, 2000, a jury acquitted the defendant of four of the thirteen charges against him, but were unable to reach a verdict on nine indictments.[1] The defendant unsuccessfully sought to have the remaining charges dismissed on the ground that the evidence was insufficient to warrant a finding beyond a reasonable doubt that he was a joint venturer with Patterson. See *Newman* v. *Commonwealth*, 437 Mass. 599, 600 (2002). The defendant was retried in January, 2003, and found guilty on six of the indictments.[2]

Among the witnesses called by the Commonwealth to testify at the retrial were Renee Lucaroni and Carla Nicola, who were the respective girlfriends of the defendant and Patterson at the time of the events in question. Lucaroni and Nicola also had been charged in connection with the robbery, as accessories after the fact. By the time of Patterson's 1998 trial, both women had pleaded guilty, but were awaiting sentencing, having reached an understanding with the district attorney that if they cooperated by testifying at any hearings regarding Patterson or

---

[1]Armed robbery, G. L. c. 265, § 17; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15B(*b*); assault by means of a dangerous weapon (five counts), G. L. c. 265, § 15B(*b*); and assault and battery (two counts), G. L. c. 265, § 13A.

[2]Armed robbery; assault and battery by means of a dangerous weapon; assault by means of a dangerous weapon (2 counts); and assault and battery (2 counts).

the defendant, the district attorney would recommend leniency at the time of sentencing.

At Patterson's trial, both women's testimony tended to establish the defendant's participation and complicity in the robbery.[3] But at the defendant's original trial in 2000, and, even more so, at the defendant's retrial in 2003, they were far less forthcoming. At the retrial, both Lucaroni and Nicola professed not to remember anything implicating the defendant, although they were able to recall other details of the relevant events.

In accordance with the procedure endorsed in *Commonwealth v. Sineiro*, 432 Mass. 735, 739-740 (2000), Lucaroni and Nicola were questioned on voir dire as to the state of their memories. Noting that their inability to remember relevant events was highly "selective," the judge found that they were feigning memory loss. The judge therefore allowed the prosecutor to elicit the testimony that they gave during Patterson's 1998 trial, by reading the questions posed to them and asking them to read back their answers. In this way, portions of their prior testimony were admitted in evidence, without limitation as to the purpose for which it could be used.

*Discussion.* In all relevant respects, this case is governed by *Commonwealth v. Sineiro, supra*, in which the Supreme Judicial Court held that it was proper to admit for substantive consider-

---

[3]Among other things, Lucaroni testified that the two couples had been driving around in her car when the defendant instructed her to stop in front of the convenience store, telling her, "We'll be right back." Later, when the foursome drove to New York for the weekend, she heard the men conversing "about money and a bag." When Nicola asked what the men were talking about, the defendant said, "We robbed a store." After returning from New York, she heard talk in the neighborhood that prompted her and Nicola to speak with the defendant and Patterson. The defendant told them, "Don't tell nobody." Later, when she told the defendant and Patterson about being interviewed by the police, the defendant said, "Okay, just stick to the story." Lucaroni also testified about the defendant's sudden and unexplained departure.

Nicola testified that just before the robbery the defendant directed Lucaroni where to drive, and told her to stop the car a couple of streets away from the store. The defendant and Patterson then left the car together. Nicola also testified that, after the foursome returned from New York, but before the women spoke with the police, the defendant told Lucaroni "not to be a snitch." The defendant and Patterson later asked the women what they had told the police and told them to "stick with the story."

ation by the jury the probable cause testimony of a witness who feigned memory loss at trial. *Id.* at 743.[4] As the court in *Sineiro* explained, in such circumstances the defendant's right to confrontation is not jeopardized, because the witness has taken the stand at the defendant's trial and is available for cross-examination. *Id.* at 743 n.8.

Contrary to the defendant's position, there is nothing in *Crawford* v. *Washington*, 541 U.S. 36 (2004), that calls into question *Sineiro*'s analysis of the right to confrontation. The central holding of *Crawford* is "that the Sixth Amendment imposes a complete bar to the admission of out-of-court statements that are determined to be testimonial unless (1) the declarant is available at trial or (2) the declarant is formally unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant." *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 6 (2005), citing *Crawford* v. *Washington*, *supra* at 68. To be sure, the out-of-court statements at issue in this case are testimonial, and, because the statements were made during Patterson's trial and not his own, the defendant did not have a prior opportunity to cross-examine the declarants. However,

---

[4]In so holding, the court expanded upon the principle established in *Commonwealth* v. *Daye*, 393 Mass. 55 (1984), overruled, in part, on other grounds, *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431 (2005), and later explained in *Commonwealth* v. *Clements*, 436 Mass. 190, 193-195 (2002), that a prior inconsistent statement made under oath before a grand jury is admissible for all probative purposes as long as the witness can be effectively cross-examined as to the accuracy of the statement, and the statement was not coerced. *Commonwealth* v. *Sineiro*, 432 Mass. at 743. *Sineiro* also held that, unlike grand jury testimony, a witness's uncoerced probable cause hearing testimony, subjected to cross-examination by the defendant, is of sufficient intrinsic reliability to support a finding of guilt without corroboration, as required by the *Daye/Clements* rule when the prior inconsistent testimony is sworn grand jury testimony, not subject to cross-examination by the defendant. *Id.* at 744.

In the present case, the defendant emphasizes that he was not a party at Patterson's trial and did not cross-examine Lucaroni and Nicola when they gave their prior testimony. However, even if the defendant is correct that, as to him, the women's prior testimony had no greater intrinsic reliability than grand jury testimony, that fact would be significant only if the defendant were raising an issue as to the the need for corroboration. We do not understand the defendant to be making such an argument, but even if he were, we are satisfied from our review of the evidence that the prior testimony of Lucaroni and Nicola was, in fact, corroborated by other evidence of the defendant's participation in the crimes, and that the use of the prior testimony to make the Commonwealth's case was proper under *Daye/Clements* principles.

consistent with *Crawford*, the admission of the prior testimony did not impinge upon the defendant's confrontation rights because the declarants were "available" at the defendant's trial.

"Availability" means that the declarant is present at trial to defend or explain the prior statement. *Crawford* v. *Washington*, *supra* at 59 n.9. When this is the case, "the Confrontation Clause places no constraints at all on the use of [the declarant's] prior testimonial statements." *Ibid.* Moreover, the confrontation clause requires only "that the defendant have an opportunity to cross-examine the witness"; it does not "guarantee a 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Commonwealth* v. *Cong Duc Le*, 444 Mass. 431, 437-438 (2005), quoting from *United States* v. *Owens*, 484 U.S. 554, 559 (1988).

Here, both declarants appeared and testified at trial. The defendant had the opportunity to cross-examine them and did so at length, focusing upon both the substance of their testimony and the circumstances in which they appeared as witnesses for the Commonwealth at Patterson's trial. While there may be rare circumstances where a witness's "total refusal to cooperate on cross-examination [is] so prejudicial as to deny the defendant his constitutional right to cross-examin[ation]," *Commonwealth* v. *Kirouac*, 405 Mass. 557, 562 (1989), this plainly is not such a case. The defendant had ample opportunity to cross-examine the witnesses, and their answers to his questions — while perhaps not what he would have preferred — were responsive. Indeed, the equivocations and inconsistencies in the witnesses' testimony were fertile ground for the defendant to explore and use to his advantage.

*Conclusion.* The admission of the prior testimony of Lucaroni and Nicola did not infringe upon the defendant's confrontation rights. The judgments of conviction are, accordingly, affirmed.

*So ordered.*