## Thomas Lee Newman, Jr. *vs.* Commonwealth.

Suffolk. May 7, 2002. - August 23, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Joint Enterprise. Evidence,* Joint enterprise. *Robbery.*

At a criminal trial, there was sufficient evidence of the defendant's involvement in the armed robbery of a convenience store to warrant a finding beyond a reasonable doubt that the defendant participated in the holdup as a joint venturer, where the defendant was present at the scene of the crime with knowledge that his companion intended to rob the store and was willing and available to help his companion if the need arose. [601-605]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on January 16, 2001.

The case was heard by *Cowin, J.*

*David F. Capeless,* Assistant District Attorney, for the Commonwealth.

*Lee D. Flournoy* for the plaintiff.

Marshall, C.J. This case arises from the armed robbery in Clark's Market, a family-owned convenience store in Dalton. The Commonwealth proceeded against Thomas Lee Newman, Jr., solely on a theory of joint venture; he was tried separately from his coventurer, Thomas Patterson. There is no claim that Newman committed any of the crimes himself. After several hours of deliberation, a jury acquitted Newman on four of thirteen indictments, but were unable to reach verdicts on the other nine indictments. The trial judge then refused to dismiss the remaining nine indictments following a mistrial that resulted from the deadlocked jury.[1] Newman filed a petition in the county court under G. L. c. 211, § 3, seeking an order that the indict-

[1]The remaining indictments charge armed robbery, G. L. c. 265, § 17; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15B (*b*); assault by means of a dangerous weapon, G. L. c. 265, § 15B (*b*) (five indictments); and assault and battery, G. L. c. 265, § 13A (two indictments).

ments against him be dismissed on double jeopardy grounds. It is Newman's position that the evidence at trial was insufficient to support a jury's finding of guilt on a joint venture theory.[2] A single justice of this court agreed, and granted his petition. The Commonwealth appealed. We vacate the judgment of the single justice and affirm the trial judge's order denying the motion to dismiss.

1. *The evidence of joint venture.* Viewed in a light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), there was evidence to show that, on July 11, 1997, Newman and Patterson had spent the day driving around the Pittsfield area with their girl friends. The foursome had also spent the previous day together, and were planning to drive that evening to Coney Island in New York.

In the early evening the driver, one of the women, parked the automobile in the parking lot of Clark's Market, the two women entered the store, perused the aisles, made no purchases, and returned to the automobile. They then drove away. Some time later, one of the men — the evidence does not specify who — told the woman to park the automobile about one and one-half blocks from the market, from where it could not be seen. While the women remained in the automobile, Newman and Patterson walked to the market. Before they could enter the store they encountered another man heading toward the store. Newman and Patterson walked past the store, and continued up the street where they waited, looked around, and then entered the store only after the man had left. In the store, the two defendants remained together at first. Newman then went to the back of the store, ostensibly in search of potato chips,[3] while Patterson proceeded to the checkout counter. Patterson pulled out a handgun, robbed and assaulted the cashier and a number of customers by pressing the gun against them or pointing it at them. A loud confrontation ensued between the market's owner

---

[2] As the Commonwealth prepared to retry Newman, he renewed a motion for required findings of not guilty, initially made at the close of the Commonwealth's case. This was, in essence, a motion to dismiss the indictments on double jeopardy grounds. See *Corson* v. *Commonwealth*, 428 Mass. 193, 196 (1998). The judge denied the motion without a hearing.

[3] There was evidence that Newman asked the cashier, and then the store owner, to direct him to where he could find a large bag of potato chips.

and Patterson, with Patterson holding him at bay with the gun. During this standoff, and amidst the cacophony of the screaming customers, Newman ran past the customers and fled from the store, followed by Patterson, a sack of money in hand, with the store owner giving close chase. The two men ran to the automobile, where one of the women shouted, "Hurry up, hurry up." Within seconds the automobile drove off. Newman said nothing to Patterson about what had just happened in the market. Later that evening, the foursome drove to Coney Island, and spent the weekend together in New York.[4]

2. *Discussion.* Patterson's activities in Clark's Market as described above are not in dispute. The only contested issue is whether there was sufficient evidence of Newman's involvement to warrant a finding beyond a reasonable doubt that he participated in the holdup as a joint venturer. The test for liability under that theory is whether "each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). We have stated that test repeatedly. See, e.g., *Commonwealth* v. *Allison*, 434 Mass. 670, 675 (2001); *Commonwealth* v. *Silanskas*, 433 Mass. 678, 689-690 (2001).

Newman contends that the Commonwealth's evidence at best was proof that he was present at the scene. The single justice agreed, holding that the Commonwealth's evidence merely placed Newman with Patterson at the scene of the crime. See *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972) ("mere presence at the commission of the wrongful act and even failure to take affirmative steps to prevent it do not render a person liable as a participant"). See also *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996) ("Mere opportunity to commit the crime or presence at the scene is insufficient without other evidence").

---

[4]Newman and the Commonwealth dispute several factual issues, such as whether the women purchased anything while they were in the store, and the extent of any conversation in the automobile. We have reviewed the evidence at trial and, as noted above, have summarized it in a light most favorable to the Commonwealth.

Emphasizing that Newman was at the back of the store when Patterson committed the robbery and accompanying assaults, the single justice said: "There is no evidence that [Newman] had knowledge that Patterson intended to commit the crime or that he himself intended to commit a crime. Nor was there evidence that he was willing and available to help Patterson if necessary." We disagree.

The case turns on Newman's knowledge and intent in accompanying Patterson back to Clark's Market, and whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore, supra,* quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319 (1979). Newman claims that the only plausible conclusion to draw from the evidence is that he went to the store to purchase something to eat because he was hungry, and that he had no idea that Patterson intended to rob the store. But proof may be made by inference, and inferences drawn from the evidence "need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980). Applying those standards to this case, a rational jury could conclude that Newman and Patterson were involved in a joint venture to rob the store. There is evidence that Newman and Patterson returned to the store, which shortly before the two women had visited without purchasing anything.[5] Then the driver, at the direction of one of the men, parked the automobile one and one-half blocks away, although the store itself had a parking lot. A jury reasonably could infer that the women had "cased" the store for the subsequent robbery, that Newman directed the automobile to a location where it could not be identified by anyone in or near the store (or that Patterson did so, without comment or protest from Newman) and that the two men then loitered in the vicinity of the store until a

---

[5]The single justice relied on evidence at trial that the women did in fact purchase "something" while they were in the store. Taking the evidence in its light most favorable to the Commonwealth, including resolving issues of credibility in the Commonwealth's favor, the jury could find, based on the testimony of the store owner and the cashier, that the women made no purchase.

male customer had left, awaiting the most opportune time to put their plan into action.[6]

As to their conduct inside the store, there is sufficient evidence from which a jury could infer that Newman and Patterson walked up one of the aisles for the purpose of further reconnaissance, and that Newman remained at the back of the store ready to provide assistance to Patterson. To that end, a jury could reasonably infer that Newman anticipated that he could observe what Patterson was doing at the front of the store. In fact, as events developed, the store owner watched Newman closely and followed him down an aisle because of a "shoplifting problem." A jury could also infer that Newman's subsequent dash out of the store was intended to distract the owner, who by then was engaged in a standoff with Patterson (Newman admits that the owner had Patterson "cornered"), and to facilitate Patterson's escape with the money. It could also properly infer that Newman fled to the waiting automobile, knowing that it would speed away immediately, as well as consider Newman's flight as consciousness of guilt. Newman protests that his conduct in the store "was more consistent with an innocent purpose than robbery." But to the extent that conflicting inferences are possible from the evidence, "it is for the jury to determine where the truth lies." *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978).

As telling as any other evidence is what did not occur in the immediate aftermath of the armed robbery. As the foursome fled in the automobile from Dalton, there was no conversation as to what had just occurred. See note 4, *supra.* Newman expressed no shock, no dismay, no outrage at Patterson's conduct. He did not attempt to separate from Patterson, but remained with him for the next several days. That all had gone according to plan is more than a reasonable inference from Newman's otherwise inexplicable conduct. This is not a case where the defendant merely "acquiesced in what occurred, but did nothing more."

---

[6]Newman argues that the evidence was "every bit as supportive of the proposition" that he was "seeking a quick meal" as he walked down the street, rather than looking for "a place to rob." That is not the test we apply; we consider whether a different inference is "reasonable and possible." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980).

*Commonwealth* v. *Avery*, 44 Mass. App. Ct. 781, 783 (1998). A jury reasonably could infer that Newman fled from the scene, diverting attention away from his coventurer as he did so, and made haste with Patterson to the waiting getaway car. In these circumstances, it would require "stout credulity" to conclude that a rational trier of fact could find only that Newman was "serenely present in the store while the chaotic events of the robbery swirled around him." *Commonwealth* v. *Sampson*, 7 Mass. App. Ct. 514, 518 (1979).

Newman correctly points out that, to sustain his convictions as a joint venturer on the armed robbery and aggravated assault charges, the Commonwealth had to prove beyond a reasonable doubt that he knew that Patterson had a gun. *Commonwealth* v. *Fickett*, 403 Mass. 194, 196-198 (1988). In a closely analogous case involving an armed robbery in a supermarket, the Appeals Court noted that it can be "expected" that a number of people will be present in a supermarket and "that a means must be found to persuade the intended victim to part with his money." *Commonwealth* v. *Tracy*, 27 Mass. App. Ct. 455, 457 (1989). While there was no direct evidence that Newman knew that Patterson carried a gun, the circumstantial evidence permitted such a conclusion. See *Commonwealth* v. *Ferguson*, 365 Mass. 1, 9 (1974) (footnote omitted) ("The probability that the defendant had 'knowledge' could be brought home to the defendant 'circumstantially' or inferentially, just as other elements leading to a finding of guilty complicity could be" [footnote omitted]). As in *Commonwealth* v. *Tracy*, *supra*, Newman and Patterson were together all day on the day of the robbery, and they had spent the previous day together, affording them plenty of opportunity to plan the robbery.[7] The vehicle was not parked in front of the store where it could be seen, but out of sight around the corner. We consider the evidence sufficient, under the standard of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), to warrant findings by a jury that New-

[7] It is of little import that Newman and Patterson did not have a prior relationship, and had met up only the day before the incident. By the time the crimes occurred they had spent many hours together, and Newman had agreed to accompany Patterson to New York. That they were "thrown together on a double date" and were "at the mercy" of the two women, as Newman argues, is not the only rational inference that can be drawn by a jury.

man actively participated in the venture, and knew that a gun was involved, for much the same reasons that the Appeals Court explained in *Commonwealth* v. *Tracy, supra.* Cf. *United States* v. *Sanborn,* 563 F.2d 488, 490 (1st Cir. 1977) (rational jury could reasonably find "that an accomplice so closely associated with the venture could not fail to know what would be the central question in any robbery: how the robbers were to force the . . . employees to part with the money"). See *Commonwealth* v. *Ferguson, supra* at 9 ("a person joining in a robbery under conditions like the present, and apprehending that the intended victim might resist, could suppose that the other actor[] might be furnished with [a] weapon[]").

The trial judge did not err in denying Newman's motion for required findings of not guilty. See note 2, *supra.* Accordingly, the case is remanded to the county court for the entry of judgment denying Newman's request for relief. The retrial on the remaining indictments may proceed in the Superior Court.

*So ordered.*