Lu, John T., J.
INTRODUCTION
The defendant, Tahjeem Dorisca (Dorisca), moves in limine to exclude Infrared Spectrophotometric testing of a black smear on a projectile recovered by police from the alleged victim’s car door. He makes three arguments.
First, Dorisca argues that visual comparison, using a conventional microscope, of the black substance on the projectile with material from Dorisca’s SUV’s window molding is expert testimony that is insufficiently reliable to gain admission into evidence when evaluated under the standards of Daubert v. Merrell Dow Pharm., 509 U.S. 579, 592-94 (1993), and Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994) (Lanigan II). The court rejects this argument finding that the comparison meets the Daubert/Lanigan II standard of reliability because it is a process that is generally accepted in the relevant scientific community.
Second, he claims that the Commonwealth conducted destructive testing without notifying him in advance, in violation of a court order. The court agrees that the Commonwealth inadvertently conducted exhaustive testing without the required notice to Dorisca but finds that, on the facts of this case, where an extremely small black smear that appeared to consist of one substance actually contained multiple components, no sanctions are appropriate.
Finally, Dorisca alleges that removal of a portion of the sample altered the consistency or layers of the substance, making examination and testing by the defense impossible. The court rejects this challenge as Dorisca has submitted no credible evidence to support this claim.
FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court makes the following findings of fact.
1. The Commonwealth claims that on May 14, 2004, Dorisca shot Abel Fuentes (Fuentes) in the head, killing him, and a bullet from one of the shots Dorisca fired passed through the rubber window moulding in Dorisca’s SUV before lodging in Fuentes’s car door.
2. Police recovered the projectile from Fuentes’s car door.
3. On May 25, 2004, Lynn District Court First Justice Joseph P. Dever allowed a defense motion that “no scientific testing be performed without notifying the defendant.”
4. The Superior Court Assistant District Attorney assigned to this case was not present for the hearing.
5. She moved for reconsideration and on June 21, 2004, Judge Dever authorized non-exhaustive testing without notice to Dorisca.
*388 6. In consultation with state police crime laboratory-chemists, the prosecutor requested that chemists remove a small portion of what was itself a tiny black smear on the projectile, for testing.
7. The prosecutor and chemists believed that removal of a small portion would be non-exhaustive because the black smear, which was actually made up of several components, appeared to consist of a single black substance.
8. On July 2, 2004, state police chemist Matthew J. Aernecke (Aernecke) removed about 10-20% of the total area of the black smear.
9. Exhibit #2 is a magnified photograph of the black smear.
10. The circled area “B” is the area that Aernecke removed.
11. While Dorisca was generally on notice of this testing, the prosecutor, believing that the testing was not exhaustive, did not notify defense counsel of the date and time of the testing.
12. During a series of examinations during July of 2004, Aernecke looked at the sample with a conventional microscope and found that it looked like material from the window moulding from Dorisca’s SUV.
13. He also conducted Infrared Spectrophotomet-ric[1] testing on both samples and found that they were consistent.[2]
14. On August 20, 2007, after the first day of hearings on this motion, state police chemist Parker L. Putnam (Putnam) conducted further testing.
15. This testing, and all further testing, was conducted in full coordination with Dorisca.
16. In late August of 2007, Putnam re-tested the previously collected sample from the black smear and found that the sample size was insufficient to obtain further information.[3]
17. This sample was subtly, but critically degraded by the movement and manipulation necessary to perform the earlier testing and this second round of testing, because a very small amount was lost.
18. Although a small amount of the tiny sample was lost, there was no other degradation.
19. For example, there were no alterations in the consistency or “layering” of the smear or samples and the court rejects suggestions or testimony to the contrary by the defense.
20. Putnam collected new material from the black smear on the projectile and found that this new sample was different from samples from Dorisca’s SUV’s window moulding.
21. Results from the testing of the first and second samples from the black smear on the projectile conflict.
22. It was not possible to conduct the Infrared Spectrophotometric testing on the smear while the smear was located on the metal projectile because Infrared Spectrophotometric testing requires the passing of light through the sample.
23. The original black smear on the projectile consisted of at least two different substances, but this was not foreseeable to the prosecutor or state police chemists, who acted reasonably and in good faith.
24. Testing in the presence of a defense expert greatly increases prosecution costs.
25. Imposition of sanctions for the Commonwealth’s conduct in this case, or imposition of the requirement of notice to the defense of testing of a small portion of an apparently “single” black smear, on the facts of this case, would increase, in an undesirable and disproportionate way, the cost of homicide prosecutions because the prosecution would be required to test, in the much more expensive fashion inherent in testing in the presence of a defense expert, in many more cases.
26. Visual comparison using a conventional microscope of a sample from the black smear and the window moulding is a process that is sufficiently generally accepted in the scientific community to establish the requisite reliability for admission in Massachusetts courts.[4]
27. In or around November 2007, Putnam removed three new samples from the black smear on the projectile.
28. Due to insufficient sample size, one of the three samples could not be tested by Infrared Spectrophotometry.
29. Due to insufficient sample size, none of the samples could be tested by Gas Chromatography Mass Spectrometry.
30. These inabilities to test were not caused by the Infrared Spectrophotometric testing by Aernecke in July of 2004.
31. Removal of the sample from the black smear or other manipulation by state police chemists did not alter its consistency or “layering” in any meaningful way, nor did it deprive Dorisca of any testing opportunity, except as specifically detailed above.
LEGAL DISCUSSION
I. Admissibility of Expert Testimony
Interpreting Federal Rule of Evidence 702, the United States Supreme Court listed the factors a trial court should consider in determining whether expert testimony is admissible. Daubert, 509 U.S. at 592-94. They include whether the theory or process employed by the expert can and has been tested, whether it has been subject to peer review and publication, the technique’s “known or potential rate of error,” and whether it has been generally accepted in the scientific community. Id.
Federal Rule of Evidence 702 is the same as Rule 702 of the Massachusetts Proposed Rules of Evidence. Laniganll, 419 Mass. at 25. The Supreme Judicial *389 Court in Lanigan II adopted the reasoning of Daubert, choosing to interpret the proposed Massachusetts Rule in the same way the Supreme Court interpreted the Federal Rule. Id. The Lanigan II decision notes that, of the Daubert factors, “general acceptance in the relevant scientific community will continue to be the significant, and often the only, issue.” Id. at 26. If a theory and process are generally accepted in the relevant scientific community, they are sufficiently reliable to be useful to the jury, and are admissible.[5] Commonwealth v. Patterson, 445 Mass. 626, 640 (2005) (admission of latent fingerprint identification testing upheld because trial court judge could have reasonably concluded that there was general acceptance for theory in fingerprint examiner community).
One of the forms of testing done in this case involved ■visual comparison using a conventional microscope of a sample from the black smear and the window moulding. The Court finds that this process is generally accepted in the scientific community, and that it is sufficiently reliable to be admissible in Massachusetts courts.
II. Destruction of Evidence
a. Loss of Sample
It is a violation of a defendant’s due process rights for the government to suppress evidence favorable to his case that is material to his guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1983). When evidence has been lost or destroyed, a balancing test determines whether the defendant is entitled to remedial action. Commonwealth v. Murphy, 442 Mass. 485, 495 (2004). In order to obtain remedial action, a defendant must satisfy the threshold burden of showing “concrete evidence” of a reasonable possibility that the destroyed evidence would have been favorable to his case. Id. (where one of two bloody footprints was lost, the defendant’s request to exclude the remaining footprint was properly denied because he failed to establish the possibility that the lost footprint would have constituted favorable evidence) (citing Commonwealth v. Dinkins, 440 Mass. 715, 717 (2004)). If the defendant meets that burden, the court must weigh the culpability of the Commonwealth with the materiality of the evidence and the potential for prejudice to the Defendant. Id.
Dorisca does not meet the threshold burden of establishing with concrete evidence that access to the destroyed sample would have aided his defense. “While the defendant need not prove that the evidence would have been exculpatory, he must establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the material would have produced evidence favorable to his cause.” Commonwealth v. Willie, 400 Mass. 427, 432 (1987) (citing Commonwealth v. Neal, 392 Mass. 1, 12 (1984), quotation marks omitted).
Even if Dorisca has satisfied his threshold burden, an application of the three-factor balancing test shows that no sanctions are appropriate in this case. With regard to the first factor, the culpability of the Commonwealth, there is no evidence that the Commonwealth acted in bad faith. See Commonwealth v. O’Day, 440 Mass. 296, 307 (2003) (evidence of grenade-like device properly admitted despite its having been detonated by police because Commonwealth did not act in bad faith and defendant failed to show that access to device would have been helpful to his case). It appears that the Commonwealth’s testing of a portion of the black window moulding smear did destroy it, preventing replication of the tests. However, there is no evidence either that Aernecke was aware of this or that he acted intentionally to render the sample useless for further testing. Aernecke believed he was removing only a small percentage of a single larger smear, and that there was an ample amount of the black smear left for defense testing.
This low level of culpability must be weighed against the materialiiy of the destroyed evidence and the potential for prejudice to the defense of admitting the test results. See Murphy, 442 Mass. at 495. Material evidence in this context is that which creates a reasonable doubt of the defendant’s guilt that would otherwise not exist when considering the entire record. Id. Admission of the test results would create unfair prejudice if the defense could have produced exculpa-toiy evidence by performing its own tests. See Willie, 400 Mass. at 432. There is no evidence that further testing of the smear would have produced exculpatory evidence or would have created reasonable doubt.
b. Loss of “Layering” or “Consistency” Evidence
The court rejects the defense expert’s suggestion or testimony that meaningful evidence was lost in the form of a consistency or layering comparison between the lost portion of the black smear versus samples from Dorisca’s SUV’s window moulding.
The issue of the scope of cross examination of Commonwealth witnesses on these issues is reserved to the trial judge.
ORDER
The defendant Tahjeem Dorisca’s Motion in Limine to exclude Infrared Spectrophotometric testing of the black smear on the projectile recovered by the police is DENIED.

During testimony this testing was sometimes referred to as Fournier Transfer Infra-Red or FTIR.

Various tests were conducted. Only tests pertinent to this motion are mentioned.

The precise date of the testing is unclear.

Testing continued as the court conducted hearings on this motion and it is possible that Dorisca no longer presses his claim that visual comparison using a conventional microscope fails to meet the standard for admissibility. To the extent that he continues to make this claim, the court rejects the challenge.

If a theory and process are not generally accepted in the relevant scientific community, the other Daubert factors may establish reliability. Patterson, 445 Mass. at 641.