Lauriat, Peter M., J.
The defendant, Gaiy Vlastos (“Vlastos”), stands indicted on charges of rape (001) and breaking and entering in the nighttime (003), arising from his alleged entry into the home of “M.D.” on March 27, 2005, and his alleged sexual assault of her at that time. He is also charged with burglary (002) and resisting arrest (004) arising from his alleged entry into M.D.’s home on January 15, 2008.
Vlastos has now moved to dismiss all four indictments on the ground that the Commonwealth lost or destroyed certain exculpatory evidence, namely the audio recording of M.D.’s call to 911 on March 27, 2005, and a light bulb taken by police from the scene of his alleged entry into M.D.’s home at that time. For the reasons set forth below, Vlastos’s motion to dismiss is denied, but the court will impose certain remedial measures to address the spoliation of evidence by the Commonwealth.
BACKGROUND
In the early morning hours of March 27, 2005, M.D. called 911 and reported that a man had entered her home at 22 Rangeley Road in Dorchester through her basement door. The police responded and took a report of the incident. The “incident report,” attached as an exhibit to the defendant’s motion, identified the suspect as an unknown white, non-Hispanic male, five foot, ten inches tall, and thin. The narrative portion of the “investigation report,” also attached as an exhibit to the defendant’s motion, was written by Detective Joshua Cummings two or three days after the incident. In that report, Cummings stated that
I responded to 22 Rangeley and spoke with the victim. She speaks little/no English so her daughter translated. The victim states that she went down into her basement on the date the incident occurred at approximately 3:00a to let her cat in. When she opened the door that leads outside she didn’t see the cat she waited a short time and then closed the door thinking the cat would just spend the night outside. She then walked down the stairs into the basement and walked to the left of the boiler that sits at the base of the stairs. As she passed the boiler she observed a male about 5’10-6’00, me *519 dium build wearing a grey hooded sweatshirt standing in the basement. She tried to run to the staircase that leads to her apartment but the unknown person cut her off. The suspect pulled on the string to shut the basement light off but he yanked too hard and broke the string and the light stayed on. He then unscrewed the light bulb and tried to cover his face. The victim observed that the suspect’s hands were white and that he was not wearing gloves. When the suspect tried to cover her face the victim screamed and the suspect fled. The victim states that she didn’t see the suspect’s face at any point during the incident. I retrieved the light bulb and will process it for prints; I also retrieved a cigarette butt the suspect may have dropped.
At some point after the reported 2005 break-in, the police showed M.D. a photographic array, from which she positively identified Vlastos.
The defendant claims that prior to March of 2005, he had visited, and at some point lived in, an upstairs apartment at 22 Rangeley Road, and that, during those times, he had been in the basement of the building. In addition, Vlastos asserts that in 2005 he did not meet the “five foot, ten inches tall” and “thin” or “medium build” descriptions given to the police. For reasons not fully explained on the record, Vlastos was not charged with any crime in 2005.
In 2008, M.D. reported to the police that the same man who had entered her home in 2005 broke into her home on January 15,2008. At this time, M.D. reported for the first time that the suspect had raped her when he entered her home in 2005. The police again showed M.D. a photographic array, but this time she did not identify Vlastos as her assailant.
The cigarette butt seized in 2005 has been forensically tested, and the Commonwealth reports that the DNA on the cigarette butt matches that of Vlastos. The seized light bulb, on the other hand, was not tested for fingerprint evidence. The Commonwealth now reports that the light bulb was never logged in as evidence in 2005, and the Commonwealth cannot now locate the light bulb. The recording of M.D.’s 2005 call to 911 is apparently in the custody of the Boston Police Department; however, the Commonwealth is unable to access the contents of the recording because of changes it has made to the recording system.[1] The Commonwealth has thus either lost or destroyed the light bulb and the recording of M.D.’s 911 call.
DISCUSSION
A defendant’s motion to dismiss on the ground that the Commonwealth has lost or destroyed exculpatory evidence requires that the court consider the two-part analysis recently clarified by the Supreme Judicial Court in Commonwealth v. Williams, 455 Mass. 706 (2010). First, the court must determine whether the defendant has met his threshold “burden of demonstrating the exculpatory nature of that evidence, using the [Commonwealth v. Neal, 392 Mass. 1, 12 (1984)] ‘reasonable possibility, based on concrete evidence’ formulation." Williams, 455 Mass. at 718. Second, “(i]f the defendant does meet this burden, then . . . [this court] . . . must proceed to balance the Commonwealth’s culpability, the materiality of the evidence, and the prejudice to the defendant in order to determine whether the defendant is entitled to relief.” Id.
I
With respect to the defendant’s threshold burden, the Supreme Judicial Court has held that
to require the defendant at this stage to prove that the [lost or destroyed evidence at issue] [was] in fact exculpatory would . . . convert the disclosure duty established by Bradip[2] and its progeny into an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal. The defendant is therefore entitled to relief for the Commonwealth's failure to preserve the [lost evidence] if he establishes a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [evidence] would have produced evidence favorable to his cause.
(Emphasis and alteration in original, citations omitted.) Williams, 455 Mass. at 714-15, quoting Neal, 392 Mass. at 12. Application of the Neal “reasonable possibility” formulation is necessarily based on the specific facts of the case.
In the present case, M.D.’s report of the incident supports the conclusion that the assailant touched the light bulb with his bare hands. The light bulb had a surface likely to take prints, and the detective seized the bulb shortly after the crime, thereby reducing the likelihood that a fingerprint on it would disappear or be marred by someone else touching it. Moreover, the evidentiary value of the light bulb was not only sufficient for it to be taken by the detective, but also, as he noted in his narrative, for it to be tested for fingerprints. This is not a case in which some forensic evidence was collected and then became unavailable to the defendant’s expert for further testing. Cf. Williams, 455 Mass. at 720; Commonwealth v. Dinkins, 440 Mass. 715, 717-18 (2004). Here, the light bulb was never tested, and now it cannot be tested. While there is always a possibility that fingerprint analysis would have been inculpatory, once the police lost the light bulb, the defendant would be tasked with an impossible burden if he was required to present evidence wholly eliminating that possibility. The standard is one of a reasonable possibility, based on evidence, that access to the light bulb would have produced favorable evidence. In the circumstances of this case, Vlastos has met his initial burden with respect to the light bulb.
*520 Turning to the 911 tape, Vlastos has presented evidence that the descriptions of the suspect recorded in the incident report and the investigatory report were not the same, and that neither accurately described him. In addition, the 2005 police reports state that the suspect was unknown to M.D., while Vlastos asserts that he was known to M.D. because he had lived in the building and had been in the basement. Vlastos further notes that in 2008, M.D. did not identify him in a photographic array, in contrast to M.D.’s alleged identification of him in 2005. The identity of the individual who allegedly entered M.D.’s home, and the reliability of M.D.’s 2005 and 2008 descriptions of her assailant, are clearly important to the defendant’s case. A 911 audiotaped description consistent with that recorded in the police reports could support the defendant’s argument that he does not meet the physical description of the alleged assailant, while an inconsistent description might be used to impeach M.D.’s credibility. Therefore, whether M.D.’s report to 911 was similar to the descriptions of the defendant recorded by the police or not, there is a reasonable possibility that the 911 tape would be favorable to the defendant’s case.
Thus, Vlastos has established a reasonable possibility that access to the lost or destroyed evidence would have produced evidence favorable to his cause.
II
To determine the appropriate relief for the Commonwealth’s loss or destruction of the light bulb and the 911 tape, the court must “balance the Commonwealth’s culpability, the materiality of the evidence, and the prejudice to the defendant.” Williams, 455 Mass. at 718. In evaluating the Commonwealth’s degree of culpability, the court considers the Commonwealth’s alleged bad faith or intentional acts, but the Commonwealth need not prove good faith or an earnest effort to preserve the evidence. Commonwealth v. Willie, 400 Mass. 427, 432 (1987). “Evidence is material if, in considering the entire record, it creates a reasonable doubt as to the defendant’s guilt that would not otherwise exist.” Commonwealth v. Otsuki, 411 Mass. 218, 231 (1991). Finally, the analysis of prejudice “must focus in part on the exculpatory nature of the evidence, and incorporate^] the Neal standard for making such a determination.” Williams, 455 Mass. at 716.
There is no evidence that the loss of the light bulb was intentional or due to bad faith. While the Commonwealth is culpable for its loss, that culpability is mitigated by the fact that this is not a case where the Commonwealth ignored a request for the light bulb. See Commonwealth v. Gomes, 403 Mass. 258, 277 (1988). The Commonwealth’s culpability is further mitigated by the extended period of time between the seizure of the light bulb and the defendant’s arrest. See id. It appears likely that the loss of the light bulb was the result of mere negligence, and was possibly related to the inherent fragility of the bulb. Cf. Commonwealth v. Sasville, 35 Mass.App.Ct. 15, 24 (1993) (where the Commonwealth authorized the destruction of a fetus alleged to be the product of the indicted rape of a child, Commonwealth’s culpability was “perilously close to bad faith” because the destroyed evidence was of such apparent extraordinary importance).
Looking next to whether the light bulb was material, and to whether Vlastos was prejudiced by its loss, if the light bulb had been tested and no fingerprints found that matched the defendant’s, the evidence would be material to the identity of the alleged intruder. As the light bulb was lost, Vlastos is prejudiced by his inability to have the bulb tested for fingerprints.
With respect to the 911 tape, the Commonwealth is clearly responsible. Its culpability is mitigated by the long period of time between the call and the defendant’s arrest. However, the Commonwealth’s decision to update its recording equipment without putting in place a system to preserve earlier recordings, all of which are potentially material evidence in future prosecutions, is something more than mere negligence. Moreover, the 911 tape is material and Vlastos is prejudiced by its absence, because it could be used to impeach the complaining witness’s credibility and to challenge her identification of the defendant in a case where the witness’s credibility and the alleged assailant’s identity will be of major importance. See Sasville, 35 Mass.App.Ct. at 25-26.
Balancing culpability, materiality, and prejudice, “courts have fashioned . . . various judicial remedies for the loss of evidence, from allowing the defendant to bring to the jury’s attention the Commonwealth’s negligent handling of the evidence, see Commonwealth v. Olszewski, 416 Mass. 707, 716-17 (1993), to dismissal of the indictment, see Commonwealth v. Henderson, [411 Mass. 309, 310 (1991)]; Commonwealth v. Sasville, 35 Mass.App.Ct. 15, 28 (1993). See also Commonwealth v. Willie, 400 Mass. 427, 432 (1987).” Commonwealth v. Harwood, 432 Mass. 290, 302 (2000). Dismissal of the indictments, “a remedy that infringes severely on the public interest in bringing guilty persons to justice,” Olszewski 416 Mass. at 717, is not required by the facts of this case. The appropriate remedy is to prohibit the Commonwealth from presenting any evidence of the cigarette butt and its subsequent analysis, as well as any evidence of the light bulb and the 911 tape. The Commonwealth should not be allowed to reap the benefit of the alleged inculpatory evidence seized from the scene of the crime and successfully preserved; while the defendant is denied the benefit of possibly exculpatory evidence seized on the same day, but not preserved. Alternatively, the defendant may choose to present evidence of the cigarette butt, the light bulb, and the 911 tape, and then “argue to the jury that the police investigation was inadequate and created a reasonable doubt *521 as to the defendant’s guilt.” Commonwealth v. Kee, 449 Mass. 550, 557 n.8 (2007).
ORDER
For the forgoing reasons, the Defendant’s Motion to Dismiss Indictments Because of Loss of Evidence is DENIED.
It is further ORDERED that the Commonwealth may not introduce at trial any evidence of or pertaining to the cigarette butt, the forensic analysis of the cigarette butt, the light bulb, or the 911 tape.

It is not clear whether the police will ever be able to access the contents of the 911 tape, or whether, with the requisite time, money, and effort, the contents might eventually be accessed. In any event, the record before the court does not show any effort to do so.

Brady v. Maryland, 373 U.S. 83, 87 (1963).