In this consolidated appeal, the defendant appeals from his convictions[2] and the denial of his motion for new trial. He raises several arguments on appeal: (1) his motion to dismiss the indictments should have been allowed because of the Commonwealth's destruction of a cross that was an important piece of evidence; (2) he was prejudiced by the Commonwealth's late disclosure of a second statement by the victim; (3) the judge erred in permitting the Commonwealth to introduce "bad act" evidence about the defendant's gang and drug activity; (4) the jury were misinformed about the nature of the victim's "informal" oral cooperation agreement; and (5) it was abuse of discretion for the trial judge to deny his motion for new trial without an evidentiary hearing.[3] We affirm.
The jury could have found that the defendant, the head of a drug distribution organization operating in the area of Orchard Street in Springfield, constructed a wood cross bearing the legend "la falla se cobra" ("the one who makes the mistake will pay"), for the purpose of punishing people who failed to follow his instructions, and as a cautionary message to the neighborhood. The defendant placed the cross in the open courtyard of an apartment complex on Orchard Street. After Carmello Rivera (a low-level underling) was reported to have stolen a knife, the defendant tied him to the cross with velcro straps and struck him three times with a fiberglass stick (a form of punishment the defendant had previously observed and condoned). Sometime later, the defendant punished in similar fashion someone accused of "unauthorized" selling of drugs in the defendant's territory. The defendant pulled this second victim's pants down and struck him about ten times with the fiberglass stick, leaving him bleeding.
Thereafter, on December 3, 2014, Springfield police were speaking to someone about unrelated events. In the course of that conversation, the individual conveyed a second-hand report that an unknown drug lackey had been beaten on a cross on Orchard Street. The police investigated, and located a cross in a courtyard on Orchard Street.[4] Observing no physical evidence on the cross, the police threw the cross in a dumpster after taking photographs of it. Approximately one week later, Rivera (who had undergone drug treatment) reported the beatings we described above.
First, the defendant argues the judge abused his discretion in denying his motion to dismiss given the destruction of the cross, an important piece of physical evidence that he contends was potentially exculpatory. Where a defendant seeks a remedy "on a claim that potentially exculpatory evidence has been lost or destroyed by the government ... the defendant must demonstrate the exculpatory nature of the destroyed evidence, by establishing a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [material] would have produced evidence favorable to his cause." Commonwealth v. Sanford, 460 Mass. 441, 447 (2011) (internal quotations omitted). We see no error in the judge's conclusion that the defendant failed to meet his burden here. Although the defendant contends that inspection of the cross could have yielded DNA, fibers, or other testable materials, " 'could have' is merely an introduction to speculation and is not a substitute for 'concrete evidence.' " Commonwealth v. Dinkins, 440 Mass. 715, 718 (2004) (citation omitted). Although the defendant argues that such evidence "might have identified either the victim or the person who built the cross," he does not argue that the presence of such evidence would have been exculpatory. Instead, he contends that its absence would have been. He also argues that neither the dimensions of the cross nor its precise method of construction (screws or nails) could be accurately assessed from the photographs, both areas that might have yielded information with which to impeach Rivera's testimony. While we agree with the motion judge that the police should not have disposed of the cross, and we are also of the view that the defendant identified specific types of possible exculpatory evidence the cross might have yielded had it been preserved, the question on appeal is whether the judge abused his discretion in concluding that those possibilities did not rise above the level of speculation. There was no concrete evidence that the cross would have yielded material evidence of value to the defense, and we cannot conclude that the judge abused his discretion in denying the motion.
"If a defendant is unable to meet this threshold burden, he may be independently entitled to a remedy of exclusion if the loss or destruction of evidence was due to the bad faith or reckless acts of the Commonwealth." Sanford, 460 Mass. at 447. Even were we to accept the defendant's argument that the police were reckless rather than negligent (as the judge found),[5] neither dismissal nor exclusion were necessarily required. See ids="4272307" index="3" url="https://cite.case.law/mass/460/441/#p447">id. at 446, quoting from Commonwealth v. Carney, 458 Mass. 418, 427 (2010) ("the imposition of sanctions under [Mass.R.Crim.P.] 14 (c), [as appearing in 442 Mass. 1518 (2004),] is governed by these principles: 'First, sanctions are remedial in nature. Second, sanctions should be tailored appropriately to cure any prejudice resulting from a party's noncompliance and to ensure a fair trial' "). Given the absence of concrete evidence that destruction of the cross resulted in the loss of exculpatory evidence and the absence of bad faith on the part of the police, we cannot say that the judge abused his discretion in concluding that neither dismissal of the indictments nor exclusion of the photographs was required. See Commonwealth v. Cronk, 396 Mass. 194, 198 (1985) ("[t]he dismissal of a criminal case is a remedy of last resort").[6]
Second, the defendant argues it was abuse of discretion for the trial judge to allow evidence concerning statements made by Rivera during a three-hour interview (second statement) with the State police the previous year because they were not disclosed to the defendant until the weekend before trial. The second statement was largely redundant of Rivera's earlier (timely disclosed) statements but added additional details, including the defendant's affiliation with the Latin Kings gang, which we recognize as a potent piece of information. A "prosecutor's obligation to disclose information [includes] that in the possession of the ... police," Commonwealth v. Liebman, 379 Mass. 671, 675 (1980), and it is a duty that is ongoing. Mass.R.Crim.P. 14(a), as amended by 444 Mass. 1501 (2005). Thus, the late disclosure was a discovery violation. That said, "[a] defendant seeking relief as a result of delayed disclosure has the burden of showing that he was prejudiced by the delay." Commonwealth v. Brien, 67 Mass. App. Ct. 309, 310 (2006). In this regard, "we inquire whether 'the defendant is able to make effective use of the evidence in preparing and presenting the case.' " Commonwealth v. Felder, 455 Mass. 359, 367 (2009), quoting from Commonwealth v. Cronk, 396 Mass. at 200. Here, the judge limited the potential prejudice by directing the Commonwealth to "stay away" from the detail of the second statement, and by prohibiting the Commonwealth from using the second statement to rehabilitate Rivera after defense counsel elicited on cross-examination that Rivera did not mention gang affiliations in his initial statement. See Commonwealth v. Felder, 455 Mass. at 367, quoting from Mass.R.Crim.P. 14(c)(1) (judge has "considerable discretion" to fashion an appropriate remedy, including " 'mak[ing] a further order for discovery, grant[ing] a continuance, or enter[ing] such other order as [the judge] deems just under the circumstances' "). In addition, the defendant had earlier notice from the Commonwealth's motion in limine that the judge would permit evidence of the defendant's narcotic activity and gang affiliation. For these reasons, we discern no prejudice from the late disclosure that requires reversal.
Third, the defendant argues the judge abused his discretion by admitting "bad acts" evidence relating to the defendant's gang and drug activity without weighing its prejudicial effect. "The long-standing rule is that 'the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose.' " Commonwealth v. McClendon, 39 Mass. App. Ct. 122, 127-128 (1995), quoting from Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). "Such other relevant purposes include intent, knowledge, state of mind, identity, motive, pattern of conduct, common scheme, or absence of mistake or accident." Id. at 128. If the evidence "has probative value, the trial judge in his discretion must decide if such evidence is admissible by determining whether its probative value outweighs the risk of undue prejudice."[7] Ibid. Because the defendant preserved the issue by raising it as a motion in limine, see Commonwealth v. Grady, 474 Mass. 715, 719 (2016), we review for prejudicial error. "An error is nonprejudicial only [i]f ... the conviction is sure that the error did not influence the jury, or had but very slight effect .... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (quotations omitted).
We discern no reversible error here. The trial judge strongly instructed the jury, both during the trial and during his final charge, that the evidence regarding gang affiliation and drug activity was not to be used "as a substitute for proof" on the charges the defendant faced or "to conclude that if the defendant was involved in these activities, he must also have committed" the charged crimes. The jury were permitted only to use the evidence "on the limited issues of the defendant's state of mind, motive, intent, and/or nature of relationship with the complainant." We "presume that a jury follows all instructions given to it." Commonwealth v. Watkins, 425 Mass. 830, 840 (1997). Moreover, the jury acquitted the defendant of three of the six charges he faced, showing that the jury were not carried away by the evidence and suggesting that they limited its use for its proper purpose. See Commonwealth v. Butler, 445 Mass. 568, 576 (2005) ("the jury appear to have paid attention to the judge's warnings about misuse of the evidence because they acquitted the defendant on the serious assault and battery charge").
Fourth, the defendant argues the prosecutor and the judge improperly referenced Rivera's agreement to testify, resulting in a substantial risk of a miscarriage of justice. The defendant contends the prosecutor gave Rivera transactional immunity but falsely represented to the jury that such immunity was informal and therefore not binding. There is nothing in the record that shows an agreement for transactional immunity between Rivera and the Commonwealth. What the record reflects is what the defendant now contends was false-an informal, nonbinding assurance that, in exchange for testimony, the Commonwealth would not prosecute Rivera based on that testimony. Although it is true that the judge during his final jury charge stated that Rivera "testified under an agreement with the prosecution ... in exchange for his truthful testimony" and that there was no direct evidence that the agreement required Rivera to be truthful, we are not persuaded that this one-word insertion in the charge carried any particular weight with the jury, especially since it is hard to imagine that a cooperation agreement would require anything other than a witness's truthful testimony.
Finally, the defendant argues that the judge abused his discretion by denying the defendant's motion for new trial without an evidentiary hearing. "We typically review the grant or denial of a motion for a new trial under the abuse of discretion or other error of law standard." Commonwealth v. Sanchez, 476 Mass. 725, 741 (2017). "The motion judge's discretion includes the decision whether to conduct an evidentiary hearing. The guideline for its exercise is 'whether a substantial issue necessitating a hearing' has arisen from the submitted affidavit material." Commonwealth v. Almonte, 84 Mass. App. Ct. 735, 738 (2014), quoting from Commonwealth v. Shuman, 445 Mass. 268, 278 (2005). Where, as here, the defendant's new trial motion is presented to a motion judge who was also the trial judge, "we pay special deference" to the judge's decision. Commonwealth v. Myers, 51 Mass. App. Ct. 627, 632 (2001). Our deference extends to the judge's evaluation of trial counsel's performance. Commonwealth v. DeVincent, 421 Mass. 64, 69 (1995). With these principles in mind, we consider the defendant's argument that counsel was ineffective for failing to request an evidentiary hearing on his motion to dismiss the indictments, and discern no abuse of discretion in denying his motion. The judge had the police report in hand, the relevant facts were essentially undisputed (i.e., the cross should not have been disposed of, but there was no bad faith), and the defendant has failed to show what the officer's testimony would have added materially to the consideration of his motion to dismiss.[8]
Judgments affirmed.

The defendant was convicted of kidnapping, G. L. c. 265, § 26 ; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b ) ; and assault and battery, G. L. c. 265, § 13A(a ). He was acquitted of similar charges relating to a second victim who did not testify.

The defendant also argues that the cumulative impact of the errors created a substantial risk of a miscarriage of justice. Although a combination of errors may, in certain circumstances, present a substantial risk of a miscarriage of justice, see Commonwealth v. Cancel, 394 Mass. 567, 568 (1985), there is no such risk here for reasons we discuss below.

When the police arrived, it appeared to them that the cross was being used as a prop in a rap video.

There is no evidence of bad faith on the part of the Commonwealth.

The defendant also contends that the prosecutor falsely represented to the jury that the destroyed cross was not important evidence. To begin with, the defendant's argument rests on a faulty premise that the prosecutor's questions are evidence. Beyond that, the argument also fails because there is nothing in the record to suggest or show that the witnesses' answers were false.

Here, the trial judge made no explicit finding regarding the probative value of the evidence or the prejudicial effect it may have. Better practice would have been to make such an explicit statement, even if only delivered orally. However, a finding to that effect is implicit in the judge's decision to admit the evidence, and we review on that basis.

For the reasons discussed above, the judge also did not err in rejecting the defendant's argument that a new trial was required because the prosecutor presented "false and misleading evidence" to the jury regarding the cross.